Custard v. Burdett.

---

## WILLIAM CUSTARD v. GILES H. BURDETT.

Where the defendant, without evidence of malice, castrated a vicious stallion of the plaintiff, which the latter suffered to run at large, annoying the neighborhood, the Court said that it was doubtful whether the act was wrongful, but if wrongful, the plaintiff was not entitled to recover more than nominal damages, without proof that the castration rendered the horse less valuable.

Appeal from Travis. Suit by appellee against appellant for damages, for wrongfully castrating a stallion, the property of the plaintiff, by reason whereof the stallion died, &c. Answer, denying that the castration caused the stallion's death, and alleging that he was very vicious and mischievous,

that the plaintiff knowing the fact, permitted him to run at large, doing great injury to the stock of the defendant and other persons, off the premises of the plaintiff, by kicking, biting and worrying them, and that the defendant castrated him to protect his own stock.

There was no evidence that the Stallion died in consequence of the castration.* Sherman Case testified that if the horse was a good breeder, he would consider him worth from four to five hundred dollars ; did not know whether he was a good breeder or not ; saw the horse after he was castrated, was badly swollen, and witness would not have given twenty-five dollars for him.

Another witness for plaintiff testified that he considered the stallion worth $275 or $300 ; was not vicious, but was unsafe to run at large ; witness had owned the stallion ; stood him one season ; had nine mares, two of which proved to be with foal ; did not consider that he had a fair chance that season ; was large, and well adapted to raising stock.

Another witness for plaintiff testified that he knew the horse before he was castrated, and he considered him worth about $300.

A witness called by the plaintiff, testified on cross-examination, that he was well acquainted with stock raising ; knew the stallion well ; did not consider him worth anything before he was castrated or afterwards ; if there was any difference, he would consider him worth more for a gelding than a stallion ; considered him dangerous to run at large ; saw him after he was castrated and considered him well.

The defendant then gave in evidence his own answers to interogatories which had been propounded to him by the plaintiff, to prove the act of castration, in which the defendant, after acknowledging the fact and stating how it was done ; showing that it was carefully and properly done,.

* The attorney for appellee stated in his brief, that his evidence on this point was inadvertanly ommitted in hastily preparing the statement of the case.

detailed the injuries and annoyances which said stallion had committed on defendant's stock, on his own premises for several months, during which he had been in the frequent habit of coming to defendant's premises.

A witness for defendant testified that the stallion frequently run at large ; that he regarded him as an animal unfit to run at large ; that witness was afraid to let his children go about the neighborhood when he was running at large ; had seen the stallion among defendant's horses ; had seen him fighting other horses after he was castrated ; did not consider him worth anything for a stallion ; considered him worth more as a gelding ; had seen him after he was castrated, and considered him well ; had seen plaintiff working him in the plough after he was castrated.

The above was all the testimony in the case. The jury found for the plaintiff $172.90cts. 8 mills.   Motion for a new trial overruled.


*Hamilton*, *Chandler* and *Walton*, for appellant.

*E. R. Peck*, for appellee.


WHEELER, J.   The question upon this appeal is whether the verdict was warranted by the evidence.   And we are of opinion that it was not ; but was manifestly contrary to the evidence.

The counsel for the appellee is mistaken in his statement of the testimony of the witness Case. He did not state what the actual value of the horse was, either before or after the alleged trespass :  but said, in a certain event, about which he did not profess to know, he would have considered him worth from four to five hundred dollars.

He did not profess a knowledge of the facts necessary in his own estimation, to enable him to judge of the value of the horse ;  and of course, his hypothetical opinion, unless the

Custard v. Burdett.

assumed hypothesis had been established by evidence—which it was not—was no evidence of his value. There was no witness that spoke of the relative value of the horse before and after the trespass complained of, who did not state that he was of equal or more value afterwards than before. The preponderance of the evidence seems to have been to the effect, that he was worthless, and worse than worthless, because mischievous, before, if not after the alleged trespass.

There was, in a word, no evidence of any injury sustained by the plaintiff by reason of the alleged wrongful act of the defendant. And there consequently was no evidence to warrant a verdict for more than nominal damages, if a trespass in fact was proved; and that is at least doubtful. The evidence showed, beyond question, that the horse was a dangerous animal to run at large; and that the plaintiff notwithstanding was accustomed to suffer him to run at large. He annoyed the neighborhood to such an extent that one of the witnesses was afraid to let his children ride out about his own premises. A witness, who sold the horse to the plaintiff, was aware of his unsafe character. He did not consider him a safe animal to run at large. Is it to be supposed the plaintiff was unaware, and needed to be informed of it? Is it to be supposed that any man could be ignorant of the fact, that an animal of the description of which this is shown to have been, and which he had owned long enough to learn his qualities, was not a safe animal to be suffered to run at large in a neighborhood, where persons of all ages and sexes are passing to and fro beyond the protection of their houses and inclosures? We very much question whether the defendant can be said to have committed any trespass, under the circumstances; but we will not prejudge, without argument upon the point, a question which may arise upon another trial. If there was a trespass, there was no injury; and it is not too much to say that it is matter of surprise, not only that the jury should have found such a verdict, but that they should

have found a verdict at all for the plaintiff, upon the evidence before them.   The judgment is reversed, and the cause remanded for a new trial.

Reversed and remanded.